```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

TIMOTHY W. HUSSEY,

Plaintiff,  Civil No. 17-1913 (RMB)

v.  **OPINION**

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

Defendant.

APPEARANCES:

CHERMOL & FISHMAN, LLC
By: Samuel Fishman, Esq.
11450 Bustleton Avenue
Philadelphia, Pennsylvania 19116
        Counsel for Timothy W. Hussey

SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL
By: Dina White Griffin, Special Assistant United States Attorney
300 Spring Garden Street, 6th Floor
Philadelphia, Pennsylvania 19123
        Counsel for Commissioner, Social Security
        Administration

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by Plaintiff Timothy W. Hussey (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits. For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge (the "ALJ") and remands for proceedings consistent with this Opinion.

I. **PROCEDURAL HISTORY**

On December 6, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability since August 1, 2012 due to residuals from an earlier ankle injury. Plaintiff's claim was initially denied on March 25, 2014, and again denied upon reconsideration on May 8, 2014. [Record of Proceedings ("R.P."), p. 35-44]. At a formal hearing on August 19, 2016, the ALJ heard testimony from Plaintiff and his attorney.

Following the formal hearing, the ALJ issued a decision on September 21, 2016, which denied Plaintiff's claim based on the ALJ's determination that Plaintiff did not suffer from a "severe impairment or combination of impairments." [R.P., p. 35-44]. The Appeals Council denied Plaintiff's request for review, thus

rendering the ALJ's decision as final. [R.P., p. 1-4]. Plaintiff now seeks this Court's review.

## II. **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of

4

impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

III. **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. From approximately 1981 through 2011, Plaintiff worked in construction as a concrete finisher. According to Plaintiff, this job involved frequent lifting in excess of 50-100 pounds, as well as use of heavy machinery, tools, and equipment. [Plaintiff's Brief in

5

Support of Complaint ("Pl's. Br."), p. 2]. Plaintiff alleges that his prior job required him to stand or walk for most of the eight-hour workday, and that he was also required to stoop, kneel, crouch, crawl, and climb throughout the day. [Id.]

According to medical records, Plaintiff has suffered fractures to both of his ankles; his left in 2006 and his right in 2008. [R.P., p. 319]. Plaintiff's application for disability benefits primarily concerns the residual impairments caused by the fracture to Plaintiff's right ankle, which occurred in July 2008 at a construction site, when he was carrying heavy materials while walking backwards and stepped into a hole. [Id.]. After two courses of physical therapy, Plaintiff's right ankle injury ultimately required surgery in November 2008. [Id.]. Due to ankle pain, Plaintiff testified that he could only stand for "[m]aybe 10 minutes, 15 minutes" or walk for "maybe five minutes" by August of 2012 [R.P., p. 64-65].

While receiving injections and other treatment for his ankle, Plaintiff continued to work as a concrete finisher into 2011. [R.P., p. 53-54]. Plaintiff testified that his ankle injury eventually prevented him from performing key aspects of his work, such as standing, walking, and climbing ladders and scaffolding while carrying his tools. [R.P., p. 64-65].

Specifically, Plaintiff testified that, in August 2012, his employer "let [him] know at the end of the day [he] was done," after Plaintiff was unable to climb scaffolding and ladders on the job site. [Id.].

Plaintiff has been briefly employed in two different positions since 2012. First, Plaintiff testified that he worked for three months for "Dry Guys," a basement waterproofing company. However, Plaintiff stated that, after he completed training, he was physically unable to perform the work on the job sites. [R.P., p. 58]. Second, Plaintiff testified that he was hired on a trial-basis for a clerical position at a friend's pallet company, "Poor Boy Pallet." [R.P., p. 56-58]. In this role, Plaintiff received accommodations so that he would not need to be on his feet throughout the day, but was told that he would be laid off after only four months of work because he could not perform all of the physical and mental aspects of the job. [Id.]. At his hearing, Plaintiff testified that he continues to drive, shop for groceries, cook food, and mow his lawn. [R.P., p. 39]. However, Plaintiff stated that these activities cause him discomfort and he needs to elevate his legs and rest afterwards. [R.P., p. 64].

Plaintiff's medical records reflect that he has complained of chronic pain in his right ankle since his injury and that he has also been treated for pitting edema in both legs and plantar

7

fasciitis in his left foot. [R.P., p. 61-63]. Plaintiff is also obese, with his medical records indicating that his weight fluctuates between 265 and 295 pounds. [R.P., p. 44]. In a foot and ankle residual functional capacity questionnaire dated July 12, 2016, Dr. Wen Chao limited Plaintiff to standing for 30 minutes at one time or 2 hours in a workday, climbing a few steps at a time, and noted that Plaintiff would occasionally have to elevate his legs during an 8-hour workday. [R.P., p. 43].

## IV. DISCUSSION

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2012, the alleged onset date. However, at step two, the ALJ concluded that Plaintiff's ankle injuries were not "severe" impairments. Because the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) his ability to perform work for twelve consecutive months, the ALJ concluded his analysis at step two and reached a determination that Plaintiff was not disabled under 20 C.F.R. § 404.1520(c). [R.P., p. 44].

As noted by Plaintiff, the Third Circuit states that "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Commissioner of Social Security, 370 F.3d 357,

360 (3d Cir. 2004). For this reason, "step two is to be rarely utilized as basis for the denial of benefits," and "its invocation is certain to raise a judicial eyebrow," Id. at 361.

Given the lenient burden at step two, the Third Circuit instructs that the "step-two inquiry is a de minimis screening device to dispose of groundless claims." Id. at 360. As such, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." Id. at 361. A reviewing court should not, however, "apply a more stringent standard of review in these cases" - a "denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id.

In his decision, the ALJ found that the medical evidence did not demonstrate that Plaintiff had a severe impairment that significantly limited Plaintiff's ability to perform basic work activities. [R.P., p. 44]. Although the ALJ found that Plaintiff's medically determinable impairment "could reasonably be expected to produce the alleged symptoms," the ALJ held that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." [R.P., p. 43]. In reaching this conclusion, the ALJ relied upon various medical opinions that described Plaintiff's impairments

9

as "non-severe" and prescribed only mild functional limitations, as well as gaps between the dates on which Plaintiff sought treatment. [Id.].

Significantly, the ALJ also found that Plaintiff's brief stints of work for Dry Guys and Poor Boy Pallet were "evidence of the claimant's ability to perform basic work activities," even though those jobs did not amount to "substantial gainful activity." [R.P., p. 37].

On appeal, Plaintiff argues that the ALJ committed a reversible legal error at step two by failing to consider whether Plaintiff's medical impairments precluded him from performing his "past relevant work" as a concrete finisher. [Pl's. Br., p. 1]. In support of this argument, Plaintiff cites a Social Security Ruling directly addressing this issue:

> If the medical evidence establishes only a slight abnormality(ies) which has not more than a minimal effect on a claimant's ability to do basic work activities, <u>but evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate</u>. The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.
>
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the severe evaluation step.

SSR 85-28, 1985 WL 56856, at *4.

Plaintiff correctly asserts, on the basis of SSR 85-28, that the ALJ should have evaluated his ability to perform his "past relevant work" as a concrete finisher at step two, even though the ALJ found that Plaintiff could perform "basic work activities."

Although the ALJ's decision addresses the credibility of Plaintiff's claim that he was unable to physically and mentally perform his clerical job at the pallet company,[1] the decision does not meaningfully discuss Plaintiff's ability to perform his past work activities as a concrete finisher.[2] The Commissioner defines "past relevant work" as "work that [claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it." See 20 C.F.R. § 404.1560(b)(2). Because the ALJ determined that Plaintiff's work for Dry Guys and Poor Boy Pallet did not amount to substantial gainful employment, the relevant inquiry should

---

[1] The ALJ discredited Plaintiff's argument that he was unable physically or mentally to perform the clerical work at Poor Boy Pallet, finding that "[t]here is no proof of any mental impairment or limitations and… [t]he claimant presented no evidence of either accommodation or pending layoff." [R.P., p. 43]. The ALJ did not discuss Plaintiff's ability to perform the work for Dry Guys.

[2] The ALJ notes that as of November 15, 2011, Plaintiff was "still considered capable of working." [R.P., p. 39-40]. However, the referenced report was based on an examination before Plaintiff's alleged onset date.

have focused on Plaintiff's ability to perform his duties as a concrete finisher.

Given the unique physical requirements of Plaintiff's job as a concrete finisher and his medically documented impairments, there is evidence in the record that suggests that Plaintiff may not be able to perform past relevant work. Plaintiff describes physically strenuous elements of his prior job as a concrete finisher, such as standing for nearly the entire eight-hour workday, frequently carrying heavy equipment, and climbing ladders and scaffolding. [Pl's. Br., p. 2]. As noted in the ALJ's decision, in a July 2016 functional capacity questionnaire, Dr. Wen Chao limited Plaintiff to standing for 30 minutes at a time or 2 hours in a workday. [R.P., p. 43]. Dr. Chao stated that Plaintiff could climb "a few steps" at a "reasonable pace," but also noted that he would need to elevate his legs during the workday. [Id.]. Dr. Chao did not indicate the duration of these limitations, but the ALJ could have sought clarification from Dr. Chao or referred Plaintiff for additional medical examination.

This Court does not express an opinion as to whether Plaintiff's impairments are severe, as defined under 20 C.F.R. § 404.1520(c), but finds that the ALJ committed a reversible legal error in failing to consider Plaintiff's ability to perform his past relevant work. Because of the ALJ's failure to consider

this issue, the record regarding Plaintiff's ability to perform his past relevant work is underdeveloped. On remand, the ALJ must evaluate Plaintiff's application at step two under the framework set forth in SSR 85-28 and fully develop the record regarding Plaintiff's ability to perform his past relevant work.

## V. CONCLUSION

For the reasons set forth above, the Court vacates the ALJ's decision and remands for proceedings consistent with this Opinion. An appropriate Order shall issue on this date.

DATED: October 31, 2018

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE